IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| TRIANGLE SOFTWARE, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:10-cv-1457 |
| ) | |
| GARMIN INTERNATIONAL, INC., ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM ORDER

THIS MATTER comes before the Court on the following post-trial Motions: (1) Defendants Garmin International, Inc.'s and Garmin USA, Inc.'s (collectively, "Garmin") Motion for Summary Judgment and/or Judgment as a Matter of Law of Non-Infringement; (2) Plaintiff Triangle Software, LLC's ("Triangle") Motion for a Limited Trial under FED. R. CIV. P. 59(a) on Issues for Which the Jury was Hung and for a New Trial under FED. R. CIV. P. 59(a) on the Three Patents for Which the Jury Found Non-Infringement; (3) Garmin's Motion for Summary Judgment and/or Judgment as a Matter of Law of No Willfulness, No Damages, and Invalidity; (4) Triangle's FED. R. CIV. P. 50(b) Motion for Judgment as a Matter of Law of No Inequitable Conduct; and (5) Garmin's Motion for Judgment of Unenforceability Due to Inequitable Conduct.

This case concerns Triangle's allegations that Garmin directly infringed, indirectly induced infringement of, and exported devices infringing, and did so willfully, five of Triangle's patents: U.S. Patent No. 7,221,287 (the "'287 patent"); U.S. Patent No. 7,508,321 (the "'321 patent"); U.S. Patent No. 7,557,730 (the "'730 patent"); U.S. Patent 7,375,649 (the "'649 patent"), and U.S. Patent No. 7,702,452, (the "'452 patent") in violation of 35 U.S.C. §§ 271(a)-(c), & (f), 281, 283, 284 and 285. Garmin has filed counterclaims for Declaratory Judgment of Non-Infringement, Invalidity, and Unenforceability as to each of the five patents in-suit.

After a five day trial commencing on November 1, 2011, the jury returned a verdict, but hung on three infringement issues before them for decision. Following trial, both Triangle and Garmin submitted the instant Motions to dispose of the issues remaining in the case. Because there is more than sufficient evidence to support the jury's verdict in this case, judgment shall be entered on the jury's verdict.

With respect to Claim 1 of the '649 patent, the Court finds there is no evidence that the accused Garmin devices infringe this Claim.[1] Essential to this Claim, among other components,

---

[1] What is claimed is:
   1. A system for identifying a fastest possible travel route, comprising:

are "a traveler data processor configured to collect traffic speed data and associate the traffic speed data with a plurality of road segments," and "a routing engine configured to determine the fastest possible travel . . . based on at least real-time traffic speed data collected by the traveler data processor." At trial, the evidence showed that the traffic data received by the accused Garmin devices is gathered, collected, and processed by third-party provider, NAVTEQ. Demonstrative exhibits admitted at trial also established that NAVTEQ is connected to various traffic data sources, such as road sensors, traffic cameras, and transportation department broadcasts, collecting this information in "real-time" to then quality-check and package it to Garmin customers.

---

> a traveler data processor configured to collect traffic speed data and associate the traffic speed data with a plurality of road segments, the plurality of road segments collectively representing one or more possible travel routes from a start point to an end point;
> a forecast engine configured to determine a predicted travel time for each of the plurality of road segments based on at least the traffic speed data for each of the plurality of road segments; and
> a routing engine configured to determine the fastest possible travel route from the start point to the end point, wherein the fastest possible travel route is the possible travel route from the one or more possible travel routes with the shortest predicted travel time, and wherein the routing engine is further configured to determine whether the predicted travel time for the fastest possible travel route exceeds a threshold based on the forecast engine subsequently calculating a predicted travel time for the fastest possible travel route based on at least real-time traffic speed data collected by the traveler data processor.
> U.S. Patent No. 7,375,649 col. 41 l. 37-60 (filed Aug. 24, 2006).

Triangle's theory is that while NAVTEQ collects traffic data, the accused Garmin devices must also collect data when these messages are received, one after another, and the devices processors elect to display one or more of the traffic messages in response to the route initiated by the Garmin customer. While Triangle argues that the Garmin devices receipt of traffic data amounts to accumulation or collection of that data, the evidence presented provides no factual support for such a theory. Rather, the overwhelming evidence, including what can be gleaned from Figures 1 & 5 of the '649 patent, establishes that when Claim 1 states "collects," the patent is referring to the raw collection of traffic data from field sources, a function performed only by NAVTEQ, and not the accumulation or receipt of traffic messages by the Garmin device.

Moreover, Claim 1 of the '649 patent requires that the collection of traffic data be at least "real-time" traffic data. It was undisputed at trial that while NAVTEQ has access to traffic information instantly, the accused Garmin devices do not receive NAVTEQ's traffic information for at least five to eleven minutes from the time NAVTEQ collects the raw data. The Court recognized during the Markman hearing that "real-time," as used in the patents, must be given its plain meaning; the plain meaning of "real-time" being, as stated by the Court, "[I]t's flowing right now. This is real-time. It's not past, it's not

future. It's real-time." Based on this plain meaning construction, and the evidence adduced at trial, only NAVTEQ, and not Garmin, collects traffic data in "real-time." The delay in receipt of the traffic data by the accused Garmin products prevents these devices from receiving "real-time" data, as per a plain meaning construction. Because the accused devices do not collect data, or are even capable of doing so in "real-time," there is no infringement by Garmin as a matter of law with regard to Claim 1 of the '649 patent.

With respect to Claim 16 of the '730 patent, the accused Garmin devices do not infringe this Claim.[2] Claim 16 requires that the device claimed be a transceiver, that is, a device that both transmits and receives data. Triangle has not adduced a scintilla of evidence that any of the accused Garmin devices were, in fact, transceivers. To the contrary, Garmin's evidence at trial showed that the accused products are only capable of <u>receiving</u> data. Mr. Jay Dee Crull, Garmin's software engineering manager and most senior employee, testified at trial that Garmin's GPS technology is "receive only," and further expressly confirmed that the accused Garmin devices are not transceivers as required by Claim 16 of the '730 patent.

---

[2] What is claimed is:
  16. The system of claim **15**, wherein the latitude and longitude information is acquired from a global positioning system (GPS) compatible transceiver.
U.S Patent No. 7,557,730 col. 42 l. 5-7 (filed May 21, 2007).

Accordingly, the Court finds no infringement by Garmin as a matter of law with regard to Claim 16 of the '730 patent.

With respect to Claim 1 of the '452 patent, the accused Garmin devices do not infringe this Claim.[3] Essential to this Claim, among other components, is "a data aggregation server configured to manage a plurality of data sets." As mentioned, there is no dispute that each of the accused Garmin devices receives or can receive traffic information from NAVTEQ. At trial, evidence showing the distribution of work between NAVTEQ and the accused Garmin devices established that NAVTEQ collects and aggregates data from multiple—"a plurality of"—data sources. Indeed, NAVTEQ's description on its website of its traffic services, which was admitted into evidence at trial, confirms as much: "NAVTEQ Traffic.com is powered by the NAVTEQ Traffic™ advanced data collection and processing infrastructure. We get our comprehensive information from diverse data sources including probe, proprietary sensors, government sensors, as well as incident and event data gathered through our round-the-

---

[3] What is claimed is:
  1. A system for determining a prediction of average speed comprising:
     a data aggregation server configured to manage a plurality of data sets;
     a road speed prediction engine executable by a processor to generate a traffic pattern for a particular segment of roadway at a given time of day and a particular day of the week based on the plurality of data sets, and generate a prediction of average speed; and
     memory configured to store the prediction of average speed.
  U.S. Patent No. 7,702,452 col. 16 l. 5-16 (filed Sept. 12, 2008).

clock, local operations centers based across the country." When comparing this function of NAVTEQ to Figure 2 of Triangle's '452 patents, it becomes plainly apparent that the claimed "data aggregation server configured to manage a plurality of data sets" is, in fact, describing computer servers like the kind owned by NAVTEQ that aggregate the raw traffic data they collect from various data sources in the field.

Critically, however, Triangle has been unable to offer any reasonable construction of Claim 1 of the '452 patent to the contrary. At trial and in its post-trial briefing, the most persuasive construction that Triangle posited with respect to the language, "a data aggregation server configured to manage a plurality of data sets," was that because the Garmin devices were coupled with the NAVTEQ data stream containing aggregated traffic data, the accused Garmin devices somehow performed that component of Claim 1. This untenable conclusion can only be reached, however, by stretching logic and contorting the plain language of the Claim 1. It appearing, therefore, that the Garmin devices do not contain "a data aggregation server configured to manage a plurality of data sets," the Court finds no infringement by Garmin as a matter of law with regard to Claim 1 of the '452 patent.

Because the Court grants judgment as a matter of law of non-infringement with respect to each of the claims of the three

patents on which the jury was hung, in favor of Garmin, the Court denies Triangle's Motion for a Limited Trial under FED. R. CIV. P. 59(a) on Issues for Which the Jury was Hung and for a New Trial under FED. R. CIV. P. 59(a) on the Three Patents for Which the Jury Found Non-Infringement.

Similarly, the Court denies Garmin's Motion for Summary Judgment and/or Judgment as a Matter of Law of No Willfulness, No Damages, and Invalidity as it seeks to set aside the jury's verdict in part and is moot in part. This Garmin Motion seeks to set aside the jury's verdict in part because the Motion prays for judgment of matter of law of no willfulness in any alleged infringement and of invalidity of the patents. However, the jury's verdict not only affirmatively finds all five of Triangle's patents in-suit to be valid, but additionally finds no willfulness in any infringement that may have occurred by Garmin. In light of the Court's decision to enter the jury's verdict, to the extent the Motion seeks inconsistent relief, this Garmin Motion must be denied. The remainder of this Motion seeks summary judgment and/or judgment as a matter of law of no damages for any infringement. However, the damages issue is mooted by the fact of the jury's non-infringement findings coupled with the Court's determination of non-infringement as a matter of law with respect to the claims in the three patents on which the jury was hung.

The final issue in the case is whether inequitable conduct transpired during the prosecution of the '287, '730, '649, and '321 patents. Inequitable conduct is an "equitable defense to patent infringement that, if proved, bars enforcement of a patent." Therasense, Inc. v. Becton, Dickenson & Co., 649, F.3d 1276, 1285 (Fed. Cir. 2011). However, the Therasense decision also imposes significantly more stringent standards for parties seeking to demonstrate inequitable conduct. To prevail on a claim of inequitable conduct under the Therasense standard, the accused infringer must first prove by clear and convincing evidence that the patentee withheld a prior art reference that was "but-for" material, i.e. "if the U.S. Patent and Trademark Office ["PTO"] would not have allowed the patenting of a claim had it been aware of the undisclosed prior art." Id. at 1291. Second, the accused infringer must clearly and convincingly establish that the patentee acted with the "specific intent to deceive the PTO." Id. at 1287. Indeed, merely "a finding that the misrepresentation or omission amounts to gross negligence or negligence under a 'should have known' standard does not satisfy this intent requirement." Id. at 1290. Accordingly, the doctrine of inequitable conduct is to be applied sparingly, and only when there has been clear and convincing evidence of wrongdoing. Id. at 1287.

Garmin makes three contentions that Dr. Gueziec and Mr. Springer engaged inequitable conduct by intentionally withholding prior art references in the '287, '730 '649, and '321 patents. First, with respect to the '287 and '730 patents, Garmin contends that (1) Dr. Gueziec deliberately misrepresented to the PTO that he invented the subject matter claimed in those two patents when, in fact, Traffic.com had invented the subject matter claimed by Dr. Gueziec, and that (2) Dr. Gueziec knew that the PTO would have declined to issue the '287 and '730 patents had the misrepresentations not been made. Second, with respect to the '649, and '321 patents, Garmin contends that (1) Dr. Gueziec deliberately misrepresented to the PTO that he invented the subject matter claimed in those two patents when, in fact, LandSonar had invented the subject matter claimed by Dr. Gueziec in its preceding NeverLate technology, a technology that Dr. Gueziec had access to and improperly called his own, and that (2) Dr. Gueziec knew that the PTO would have declined to issue the '649, and '321 patents had the misrepresentations not been made. Finally, Garmin contends that Mr. Springer's failure to disclose certain LandSonar prior art during the prosecution of the '287, '730 '649, and '321 patents, both prior to and after the acquisition of LandSonar by Triangle, amounted to inequitable conduct.

At trial, Garmin put on evidence to show that similar products from both Traffic.com and LandSonar were in existence, known to Dr. Gueziec and Mr. Springer, and that certain references were omitted during the prosecution of some of the patents. However, considering all of Garmin's evidence, the jury found all of the patents in-suit valid as not anticipated by the prior art. A finding of inequitable conduct would, therefore, be inconsistent with the jury's verdict and evidence assessments on the issue of invalidity.

Equally significant, Garmin did not put on any evidence of a specific intent to deceive the PTO. Rather, Garmin's evidence established the foregoing omissions to the PTO of certain prior art and suggested the presence of impropriety, asking the jury to make the leap to a finding of invalidity. The jury declined to do so, and the Court's ruling must remain consistent with the jury's findings from the same, overlapping evidence for purposes of the inequitable conduct issue. Garmin had the heavy burden to show "but-for" materiality and a specific intent to deceive. Because the jury necessarily had to make a determination that the prior art withheld by Triangle was not material in order to reach the conclusion that the patents were valid, and because Garmin has not adduced sufficient evidence that clearly and convincingly establishes a specific intent to deceive the PTO, the Court concludes that no inequitable conduct occurred in the

prosecution of the '287, '730 '649, and '321 patents. Accordingly, the Court grants Triangle's FED. R. CIV. P. 50(b) Motion for Judgment as a Matter of Law of No Inequitable Conduct and, necessarily, the Court denies Garmin's Motion for Judgment of Unenforceability Due to Inequitable Conduct, which seeks a diametrically opposed result.

For the foregoing reasons, respectively, it is hereby

ORDERED that judgment is entered on the Jury's Verdict; that Garmin's Motion for Summary Judgment and/or Judgment as a Matter of Law of Non-Infringement is GRANTED as to all accused Garmin devices on the '649 Patent Claim 1, '730 Patent Claim 16, and '452 Patent Claim 1; that Triangle's Motion for both a Limited Trial and for a New Trial under FED. R. CIV. P. 59(a) is DENIED; that Garmin's Motion for Summary Judgment and/or Judgment as a Matter of Law of No Willfulness, No Damages, and Invalidity is DENIED; that Triangle's FED. R. CIV. P. 50(b) Motion for Judgment as a Matter of Law of No Inequitable Conduct is GRANTED; and that Garmin's Motion for Judgment of Unenforceability Due to Inequitable Conduct is DENIED.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
February 14, 2012